UNITED STATES DISTRICT COURT



FILED

AUG 2 2 2005

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

|  |  |  |
|---|---|---|
| CHRISTOPHER KEATING, | * | CIV 04-4208 |
| Plaintiff, | * | |
| -vs- | * | MEMORANDUM OPINION |
| | * | AND ORDER |
| UNIVERSITY OF SOUTH DAKOTA, | * | |
| JAMES ABBOTT, ROYCE ENGSTROM, | * | |
| DONALD DAHLIN, MATTHEW MOEN, | * | |
| TIMOTHY HEATON, CHRISTINA | * | |
| KELLER, SOUTH DAKOTA BOARD | * | |
| OF REGENTS, MIKE ROUNDS, | * | |
| Defendants. | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

The following motions filed by Plaintiff are pending before the Court: Motion for Preliminary Injunction (doc. 3), Motion for Reimbursement of Summons Expenses (doc. 33), and Motion to Amend/Correct Complaint (doc. 36). The pending motions filed by Defendants are: Motion for Summary Judgment (doc. 24) and Motion to Strike Response to Motion (doc. 39).

## BACKGROUND

Plaintiff Christopher Keating ("Keating") was a nontenured professor at the University of South Dakota ("USD") beginning in the fall of 1999. Along with five other tenure track faculty members, including defendants Timothy Heaton ("Heaton") and Christina Keller ("Keller"), Keating was a member of the Department of Earth Sciences and Physics. Heaton is the Chair of the USD Department of Earth Sciences and Physics. Keller is the Director of the USD Physics Program and was Keating's direct supervisor. Problems apparently arose in the relationship between Keating and Keller. On April 23, 2004, Heaton sent an e-mail to Keating. Keating replied on April 24, 2004, stating, in part:

On the other hand, I did come to you with my problems and the result was highly unsatisfactory. You came back and insisted that not only did I not have anything to complain about, but everything except the price of corn futures was my fault. We will ignore the fact the two are mutually exclusive. How could I be at fault for everything when you already concluded there was nothing wrong? You and Dr. Keller took this matter out of the department and made it a school-wide problem. You did nothing to address my problems except to tell me that I was essentially not part of the department. You two then threatened me with false charges of sexual harassment and stated in your letters that I had engaged in inappropriate behavior.

I came to you with a problem and you made it infinitely worse. Your actions have caused permanent damage to my relationship with the two of you. There is no way I can trust you with another problem.

I cannot communicate with Dr. Keller because she is a lieing (sic) back-stabbing sneak. I ask her questions and she will not answer. She learns important information and she withholds it. She keeps a secret file on me that she pulls out to use against me. She then talks badly about me around campus.

(Doc. 1, p. 2.)

On June 15, 2004, Keating received a letter from Academic Affairs, advising him of the prospect of non-renewal of his contract and scheduling a meeting with him for June 22, 2004. The meeting took place on June 22, 2004, with Keating, Heaton, Keller, Dahlin and Moen present. Keating did not deny calling Dr. Keller a "lieing, backstabbing sneak." Rather, he explained that all of his statements about Dr. Keller were "factually correct." Keating's employment contract was not renewed for the 2005-2006 academic year due to his lack of civility. The non-renewal resulted in a one-year term contract for the 2004-05 school year.

Keating filed this lawsuit on December 21, 2004, claiming that he was fired because of speech that is protected by the First Amendment. He did not sue the individuals in their individual capacities. Defendants were served with the Complaint and Keating's motion for preliminary injunction in February, 2005. They oppose the motion for preliminary injunction and seek summary judgment on the Complaint. After Defendants filed the motion for summary judgment, Keating moved to amend his Complaint to sue Defendants in their individual capacities, to add state law claims for "tortious negligence, negligent supervision and training, intentional infliction of emotional

distress, and negligent infliction of emotional distress," to add a reference to 42 U.S.C. § 1983,[1] and to include a claim that his mobilization for the Naval Reserves was "a contributing factor" to the nonrenewal decision in violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA").

## DISCUSSION

### Motion for Reimbursement of Summons Expenses

Keating asserts that Defendants all were served with a waiver of service of summons in accordance with Rule 4 of the Federal Rules of Civil Procedure. The rule provides that if a defendant fails to comply with a request for waiver, "the court shall impose the costs subsequently incurred in effecting service on the defendant unless good cause for the failure be shown." Fed.R.Civ.P. 4(d). Defendants did not file a response to Keating's motion for reimbursement of summons expense, and they have not shown any cause for failing to waive service. Thus, the Court must impose costs for service in the amount of $161.50 as requested by Keating.

### Motion to Stay

Defendants oppose Keating's motion to amend by arguing that this Court should abstain from addressing the issues which are presently pending before other tribunals. (Doc. 42, Resistance to Plaintiff's Motion to Amend Complaint.) The Court will construe Defendants' abstention argument as a motion to stay this case pending the outcome of the ongoing state and administrative proceedings initiated by Keating. Defendants ask this Court to abstain only from the state law claims, but avoiding piecemeal litigation is an important factor to consider in determining whether

---

[1]Although Keating neglected to specify that his action was brought pursuant to 42 U.S.C. § 1983, that statute does not create substantive rights, it is "merely a vehicle for seeking a federal remedy for violations of federally protected rights." *Foster v. Wyrick*, 823 F.2d 218, 221 (8th Cir. 1987). Keating clearly identified the underlying constitutional right allegedly infringed upon by Defendants, thus necessarily implicating § 1983. Under a section he entitled, "Nature of Action," Keating states that he "seeks a declaration as to his constitutional rights to engage in protected speech." He claims that defendants terminated his employment "because they didn't like what he said," and that his dismissal violates the First Amendment to the United States Constitution.

3

to abstain, and the Court finds that staying only a portion of Keating's claims in this case would subvert the purpose of abstention.

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976). In general, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Id.* (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). Nevertheless, a district court may stay its hand in certain exceptional circumstances, when it is motivated by considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.*, 424 U.S. at 817 (citations omitted). The task is not to find some substantial reason to exercise federal jurisdiction, but to ascertain whether there exist exceptional circumstances to justify the surrender of that jurisdiction. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 26-27 (1983).

A.    Parallel State-Court Proceedings[2]

For a federal district court to abstain under *Colorado River*, the proceedings in state and federal court must be parallel. "Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *LaDuke v. Burlington Northern R.R. Co.*, 879 F.2d 1556, 1559 (7th Cir. 1989) (citation and internal quotation marks omitted). This lawsuit is parallel to the other actions Keating has filed. Within two weeks after filing this federal First Amendment case, Keating commenced an action against defendants Heaton and Keller in state court based on the nonrenewal of his contract with USD. In that action, he is seeking damages for intentional infliction of emotional distress, conspiracy to inflict emotional distress, and defamation. As mentioned earlier in this Memorandum Opinion, Keating has moved to amend his Complaint filed in this Court to add those state law claims.

---

[2]A copy of some pleadings from Keating's state court action and his administrative proceedings have been filed by Defendants who have asked this Court to take judicial notice thereof. The Court will take judicial notice of the documents pursuant to Fed.R.Evid. 201. *See also Deford v. Soo Line R. Co.*, 867 F.2d 1080, 1087 (8th Cir. 1989)(taking judicial notice of pleadings filed in a separate action in a federal district court in Chicago).

On August 7, 2004, Keating filed a Petition for Hearing on Unfair Labor Practice with the South Dakota Department of Labor, naming James Abbott and USD as respondents. He asserts claims for wrongful dismissal, retaliatory discharge, a violation of the COHE agreement, and violation of his free speech rights. In a submission dated October 15, 2004, he asked the South Dakota Department of Labor to add Keller, Heaton, Dahlin, Moen and Engstrom as respondents, thereby including all the individuals named in this federal proceeding.

Also pending is an appeal before the South Dakota Department of Labor in the matter of Grievances of Dr. Christopher Keating concerning his nonrenewal. Attorney Terry N. Prendergast was appointed as the hearing examiner in that matter. As part of his first grievance, Keating alleged that nonrenewal of his contract for calling Keller a "lieing, backstabbing sneak" violates his right to free speech. The hearing examiner found that Keating failed to demonstrate a violation of his First Amendment rights. The hearing examiner's recommendation to deny Keating's grievances was adopted by the Board of Regents, and that decision is on appeal before the South Dakota Department of Labor.

In summary, all of the proceedings concern substantially the same parties and issues.

### B. *Colorado River* Factors

Abstention under *Colorado River* involves the balancing of several factors: (1) whether there is property over which one court has established jurisdiction; (2) whether the federal forum is inconvenient; (3) whether maintaining separate actions may result in piecemeal litigation; (4) whether one case has priority, especially in terms of relative progress; (5) whether state or federal law controls; and (6) whether the state forum is adequate to protect the federal plaintiff's rights. *U.S. Fidelity and Guar. Co. v. Murphy Oil USA, Inc.*, 21 F.3d 259, 263 (8th Cir. 1994). These factors are not to be applied as a "mechanical checklist"; rather, they must be carefully balanced as they apply in each particular case, with the balance heavily weighted in favor of the exercise of jurisdiction. *See Moses H. Cone*, 460 U.S. at 16.

The first *Colorado River* factor does not weigh for or against abstention because this lawsuit does not involve property over which the state court has established jurisdiction.

The second factor weighs somewhat in favor of abstention. The federal court in Sioux Falls is less convenient than the state court in Vermillion where USD is located and where most of the parties work and likely reside. The federal court is 55 miles from Vermillion by interstate highway.

The avoidance of piecemeal litigation weighs heavily in favor of staying this action. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *LaDuke*, 879 F.2d at 1560 (citations omitted). Adjudicating Keating's lawsuit would require this Court to consider the same legal issues which are being litigated in state court and before the South Dakota Department of Labor,[3] and presents the chance that those issues would be resolved differently in the separate forums. The possibility that duplicate lawsuits will result in conflicting results is an especially important concern, because such results endanger both the "legitimacy of the court system in the eyes of the public" and "fairness to individual litigants." *See Lumen Constr., Inc. v. Brant Constr. Co., Inc.*, 780 F.2d 691, 694 (7th Cir. 1985). With four different proceedings involving similar issues, the possibility of conflicting results is high.

The priority of the cases weighs slightly in favor of abstention. Priority "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress

---

[3]The principle of federal abstention has been extended to pending state administrative proceedings provided that they are "judicial in nature." *Middlesex County Ethics Committee. v. Garden State Bar Assn.*, 457 U.S. 423, 433-34 (1982) ("It is clear beyond doubt that the New Jersey Supreme Court considers its bar disciplinary proceedings as 'judicial in nature.' As such, the proceedings are of a character to warrant federal-court deference."). *See also Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 627 (1986) ("Because we found that the administrative proceedings in *Middlesex* were 'judicial in nature' from the outset, ... it was not essential to the decision that they had progressed to state-court review by the time we heard the federal injunction case.").

has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21. Keating's Petition for Hearing on Unfair Labor Practice was filed on August 9, 2004, well before this federal lawsuit was filed. The Court knows that Keating also filed the action regarding his grievances before this federal case because about one week before this case was filed, the hearing examiner issued his decision in the matter of the Grievances of Dr. Christopher F. Keating. That is presently on appeal to the South Dakota Department of Labor. The complaint in state court was filed just a short time after the Complaint in this case. The Court is not aware of how advanced the proceedings are in the state court action, but the record reveals that much progress has been made on Keating's administrative claims before the South Dakota Department of Labor. As a result, this factor supports abstention.

The fifth and sixth factors – whether state or federal law controls and the adequacy of the state forum – are closely related in this case. State law would control the state law claims in either state or federal court. The state law claims out-number the federal law claims. In *De Cisneros v. Younger*, 871 F.2d 305 (2d Cir. 1989), the Second Circuit said that "although the absence of federal issues does not require the surrender of jurisdiction, it does favor abstention where the bulk of the litigation would necessarily revolve around the state-law rights of numerous parties." *Id.* at 309 (citation, internal quotation marks and alterations omitted). The Supreme Court has acknowledged that the presence of state-law issues may sometimes weigh in favor of abstention. *See Moses H. Cone*, 460 U.S. at 26. Federal circuit courts have recognized a number of circumstances in which such issues help support a decision to abstain. *See Allison v. Security Ben. Life. Ins. Co.*, 980 F.2d 1213, 1216 (8th Cir. 1992) (district court did not err in dismissing diversity lawsuit in favor of the state court action); *De Cisneros*, 871 F.2d at 309. There is no question that the South Dakota court is an adequate forum for resolving the issues raised in this lawsuit. In this case, the presence of state-law issues and the availability of South Dakota as an adequate forum weigh in favor of abstention.

As for the First Amendment claim, there is a presumption that the state courts are as capable as their federal counterparts of guaranteeing federal rights. *See e.g., Middlesex Ethics Comm.*, 457 U.S. at 431 ("Minimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights."). The Court finds that Keating's First

Amendment rights would be adequately protected in state court should he choose to amend his complaint to add those claims. Regarding the USERRA claim Keating seeks to add to his Complaint in this case, at least one circuit has held that a 1998 amendment to USERRA shows that Congress conferred only on state courts jurisdiction over USERRA suits against state employers. *See Velasquez v. Frapwell*, 165 F.3d 593, 594 (7th Cir. 1999) (interpreting amendment to USERRA, 38 U.S.C. § 4323(b), in context of claim brought by person against state employer). Although the Eighth Circuit has not addressed the issue whether state courts have exclusive jurisdiction over USERRA claims against state employers, it is clear from the language of 38 U.S.C. § 4323 that jurisdiction over USERRA claims by individuals against state employers does not lie only in federal court, and Keating would have the right to bring his USERRA claim in state court. *See* 38 U.S.C. § 4323(b)(2) ("in the case of an action against a State (as an employer) by a person, the action may be brought in a State court . . . .")

Application of the *Colorado River* factors in this case reveals the existence of exceptional circumstances that warrant abstention. All of the defendants, and Keating as well, deserve a clear, uniform, and expeditious resolution of the issues presented here and in the state administrative and court proceedings. The South Dakota court can resolve all of the state law claims as well as the constitutional law claim and the USERRA claim.

The action will be stayed, but not dismissed, to allow the Court to retain jurisdiction "in case the state litigation 'washes out' for some reason and fails to reach its anticipated end of a final decision on the merits." *See LaDuke*, 879 F.2d at 1562. Because the Court is abstaining, Keating's Motion to Amend/Correct Complaint, Defendants Motion to Strike Response to Motion, and Defendant's Motion for Summary Judgment are moot.

**Motion for Preliminary Injunction**

The Court will rule on the motion for preliminary injunction despite the decision to stay this case because, although the Eighth Circuit would not have jurisdiction to review the stay order, it would have jurisdiction to review the order denying preliminary injunctive relief. *See Lunde v. Helms*, 898

8

F.2d 1343 (8th Cir. 1990) (affirming district court's stay of federal case until resolution of the on-going state administrative and judicial review proceedings in which plaintiff was challenging her dismissal from medical school, and affirming district court's denial of preliminary injunctive relief).

The factors to consider when determining whether a preliminary injunction is appropriate are (1) threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Dataphase v. CL Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). In seeking this preliminary injunction, Keating bears the burden of proof and that burden is even greater in a case such as this where the relief he is seeking will give him substantially the relief that he would obtain after a full trial on the merits. *See Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987); *Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scot Fetzer Co.*, 997 F.2d 484, 486 (8th Cir. 1993).

### A. Threat of Irreparable Harm to Plaintiff

Keating believes that having to seek a career outside of USD will cause him irreparable harm because he has worked hard to establish his career there. His assertions fall short of satisfying his evidentiary burden on this factor. "Irreparable harm must be of a peculiar nature so that compensation in money alone cannot atone for it." *Pappan Enterprises, Inc. v. Harden's Food SYS., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998). Keating has not alleged the type of injury that money alone would not remedy. *Gelco Corp.*, 811 F.2d at 420 ("If Gelco's actions are ultimately proved unlawful, Coniston will not have suffered irreparable harm, for its injury . . . can be remedied in a suit for money damages"). This factor clearly weighs in favor of Defendants as there has been no showing of irreparable harm. Instead, it appears that this is an employment case where money damages would be an adequate remedy, and Keating has requested money damages as well as injunctive relief.

9

## B. Balance Between the Harms

Although Keating may be enduring some harm by virtue of having to find other employment absent an injunction, the harm that Defendants would incur if such an injunction were granted and they were required to reemploy Keating is more significant in that forced reemployments are difficult, and what record there is so far in this case clearly indicates this forced reemployment would be disruptive to at least one department in the University. The Court finds that this factor weighs in favor of Defendants.

## C. Probability of Plaintiff's Success on the Merits

Keating contends that Defendants' decision not to renew his employment violates his First Amendment right to freedom of speech because he was terminated for engaging in protected speech. Defendants argue that Keating's reference to Keller as a "lieing, backstabbing sneak" is not speech protected by the First Amendment. For the following reasons, the Court finds that Keating has failed to carry his burden of establishing a likelihood of success on the merits.

In *Pickering v. Board of Education*, 391 U.S. 563 (1968), the Supreme Court held that the First Amendment protects the rights of public employees "as citizens to comment on matters of public interest" in connection with the operation of the government agencies for which they work. 391 U.S. at 568. However, the government has legitimate interests in regulating the speech of its employees. In applying the *Pickering* balancing test, the Court first must determine whether the speech at issue can be "fairly characterized as constituting speech on a matter of public concern." *Connick v. Myers*, 461 U.S. 138, 146 (1983). Second, the Court must consider whether the interest of the employee, as a citizen, in commenting on matters of public concern outweighs the interest of the state, as an employer, in promoting the efficiency of the public services it performs. *Pickering*, 391 U.S. at 568. Both of these questions are issues of law for the Court to decide. *Shands v. City of Kennett*, 993 F.2d 1337, 1342 (8th Cir.1993).

Matters of public concern include matters of political, social, and other concern to the community. *See Connick*, 461 U.S. at 147-48. In evaluating speech, the Court must examine the

10

content, form, and context of the speech as revealed by the entire record. *See id.* Keating argues that calling Keller a "lieing, backstabbing sneak" in what Keating considered a private e-mail to their Department head involved a matter of public concern. He seems to be arguing that management of the USD physics department is a matter of public interest, therefore his comments about Keller involve a public concern. He also seems to believe that if his statements concerning Keller are true, they are protected speech. Defendants assert that Keating's reference to Keller as a "lieing, backstabbing sneak" amounts to no more than bickering and personal discontent, speech that is not protected by the First Amendment. Even if one assumes for present purposes that Keating's statement is true, that does not make the statement protected speech. In addition, whether the statement addresses public concerns is a law question. It is the Court's conclusion that the statement in question does not address a public concern and is not protected speech.

"When a public employee's speech is purely job-related, that speech will not be deemed a matter of public concern. . . . Unless the employee is speaking as a concerned citizen, and not just as an employee, the speech does not fall under the protection of the First Amendment." *Buazard v. Meridith*, 172 F.3d 546, 548 (8th Cir. 1999). Statements that deal with personnel matters are not generally protected by the First Amendment, and statements of "purely academic interest" to the speaker will be given broader protection than those in which she has a personal interest. *See Shands*, 993 F.2d at 1343. Keating's statements deal with personnel matters and criticize Keller as a supervisor, not as a public official. Keating found fault not with Keller's actions as affecting the public, but as they affected Keating. The Court finds that Keating's statements do not address a matter of public concern. *See, e.g., Connick*, 461 U.S. at 147-48 (when public employee speaks as employee on matters of personal interest and not as citizen on matters of public concern, federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by public agency in reaction thereto); *Clark v. Holmes*, 474 F.2d 928, 931 (7th Cir. 1973) (professor's disputes with superiors and colleagues were not matters of public concern and involved professor only as teacher rather than as concerned citizen; "we do not conceive academic freedom to be a license for uncontrolled expression . . . internally destructive of the proper functioning of the institution").

11

Even if the Court were to assume that Keating's statements touched on a matter of public concern, *Pickering* would require balancing Keating's interest in making the statements against the interest of the State in promoting the efficiency of the public services it performs through its employees. *Pickering*, 391 U.S. at 568. The Eighth Circuit has identified six *Pickering* factors to be applied when performing the balancing test:

> (1) the need for harmony in the office or work place; (2) whether the government's responsibilities require a close working relationship to exist between the plaintiff and co-workers when the speech in question has caused or could cause the relationship to deteriorate; (3) the time, manner, and place of the speech; (4) the context in which the dispute arose; (5) the degree of public interest in the speech; and (6) whether the speech impeded the employee's ability to perform his or her duties.

*Hands*, 993 F.2d at 1344. "The *Pickering* balance is flexible, and the weight to be given to any one factor depends upon the specific circumstances of each case." *Id.* The Court concludes that the balancing test weighs in favor of Defendants. *See, e.g., Derrickson v. Bd. of Educ. of the City of St. Louis*, 738 F.2d 351, 352-53 (8th Cir. 1984) (teacher's frequent, disruptive complaints, even if made out of genuine concern for improving quality of education, were not shielded by the first amendment when balanced against "his attendant inability to work with his superiors, peers, and students in a conciliatory manner"). This factor weighs strongly in the Defendants' favor as Keating is unlikely to succeed on the merits of his claims in this lawsuit.

### D. Public Interest

The public interest is best served by denying Keating's request for a preliminary injunction. It allows for more efficient and orderly operation of physics department of the University of South Dakota. It is not in the public interest to force an institution of higher education to unwillingly accept a faculty member back for the duration of litigation by that person against his colleagues where Keating is quite likely to ultimately lose the litigation.

In conclusion, based on the Court's evaluation of the *Dataphase* factors, Keating has failed to meet his burden of proof and his Motion for Preliminary Injunction will be denied. Accordingly,

12

IT IS ORDERED:

1. That the Motion for Reimbursement of Summons Expenses, (doc. 33), is granted, and defendants shall pay Plaintiff $161.50;

2. That the Motion for Preliminary Injunction, (doc. 3), is denied.

3. That the Motion for Summary Judgment, (doc. 24), Motion to Amend/Correct Complaint, (doc. 36), and Motion to Strike Response to Motion, (doc. 39), are denied as moot, without prejudice to the parties' right to renew the motions if the abstention is removed;

4. That the above-captioned case is stayed pending final resolution of the parallel state proceedings; and

5. That the Clerk of Court shall close this case for administrative and statistical purposes, reserving the parties' right to file a motion seeking to reopen the case and return it to active status if so warranted.

Dated this 22nd day of August, 2005.

BY THE COURT:

Lawrence L. Piersol
Chief Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: _____
(SEAL)       DEPUTY

13