UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

FILED
AUG 2 7 2010

| | | |
|---|---|---|
| CHRISTOPHER KEATING, | \* | CIV 04-4208 |
| Plaintiff, | \* | |
| -vs- | \* | MEMORANDUM OPINION AND ORDER |
| UNIVERSITY OF SOUTH DAKOTA, JAMES ABBOTT, ROYCE ENGSTROM, DONALD DAHLIN, MATTHEW MOEN, TIMOTHY HEATON, CHRISTINA KELLER, SOUTH DAKOTA BOARD OF REGENTS, MIKE ROUNDS, | \* | |
| Defendants. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The following motions filed by Plaintiff are pending before the Court: Motion to Reopen Case (doc. 45), Motion to Compel (doc. 48), and Motion for Summary Judgment (doc. 51).

## BACKGROUND

Plaintiff Christopher Keating ("Keating") was a nontenured professor at the University of South Dakota ("USD") beginning in the fall of 1999. Along with five other tenure track faculty members, including defendants Timothy Heaton ("Heaton") and Christina Keller ("Keller"), Keating was a member of the Department of Earth Sciences and Physics. Heaton was the Chair of the USD Department of Earth Sciences and Physics. Keller was the Director of the USD Physics Program and was Keating's direct supervisor. Problems apparently arose in the relationship between Keating and Keller. On April 23, 2004, Heaton sent an e-mail to Keating. Keating replied on April 24, 2004, stating, in part:

> On the other hand, I did come to you with my problems and the result was highly unsatisfactory. You came back and insisted that not only did I not have anything to complain about, but everything except the price of corn futures was my fault. We will ignore the fact the two are mutually exclusive. How could I be at fault for everything when you already concluded there was nothing wrong? You and Dr. Keller took this matter out of the department and made it a school-wide problem.

You did nothing to address my problems except to tell me that I was essentially not part of the department. You two then threatened me with false charges of sexual harassment and stated in your letters that I had engaged in inappropriate behavior.

I came to you with a problem and you made it infinitely worse. Your actions have caused permanent damage to my relationship with the two of you. There is no way I can trust you with another problem.

I cannot communicate with Dr. Keller because she is a lieing (sic) back-stabbing sneak. I ask her questions and she will not answer. She learns important information and she withholds it. She keeps a secret file on me that she pulls out to use against me. She then talks badly about me around campus.

(Doc. 1, p. 2.)

On June 15, 2004, Keating received a letter from Academic Affairs, advising him of the prospect of non-renewal of his contract and scheduling a meeting with him for June 22, 2004. The meeting took place on June 22, 2004, with Keating, Heaton, Keller, Dahlin and Moen present. Keating did not deny calling Dr. Keller a "lieing, backstabbing sneak." Rather, he explained that all of his statements about Dr. Keller were "factually correct." Keating's employment contract was not renewed for the 2005-2006 academic year due to his lack of civility.[1] The non-renewal resulted in a one-year term contract for the 2004-05 school year.

Keating filed this pro se lawsuit on December 21, 2004, claiming that he was fired because of speech that is protected by the First Amendment. He also asserted in his Complaint that no

---

[1] According to Keating, the "civility clause" in Appendix G of the COHE agreement states;
Universities play a special role in preparing students to lead the complex social organizations through which businesses and professions operate and through which free people govern themselves. Students must be taught, and they must be shown through the example given by institutional employees, that members of stable, effective and prosperous social organizations observe norms of conduct under which all participants treat one another civilly and carry out their respective tasks in a constructive and informed manner. Complex social organizations derive their strength from the cooperation fo those who participate in them. By virtue of their special role in preparing future generations of leaders, universities have a particular concern with conduct that destroys the bonds of cooperation and common purpose on which society rests by demeaning members of the community, and such conduct cannot be tolerated in an institution whose very purpose is to shape the skills and conscience of the rising generations.

definition of uncivility as used in Appendix G of the COHE agreement has ever been provided. After Defendants filed a motion for summary judgment, Keating moved to amend his Complaint to sue Defendants in their individual capacities, to add state law claims for "tortious negligence, negligent supervision and training, intentional infliction of emotional distress, and negligent infliction of emotional distress," to add a reference to 42 U.S.C. § 1983, and to include a claim that his mobilization for the Naval Reserves was "a contributing factor" to the nonrenewal decision in violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA").

Defendants argued that this Court should abstain from addressing the issues which were pending before other tribunals. The Court agreed and concluded that the South Dakota courts could resolve all of Keating's state law claims as well as the constitutional law claim and the USERRA claim. (*See* Doc. 43, Memorandum Opinion and Order issued August 22, 2005.) This federal lawsuit was stayed, but not dismissed, to allow the Court to retain jurisdiction "in case the state litigation 'washes out' for some reason and fails to reach its anticipated end of a final decision on the merits." *Id.*

Keating now moves to reopen the case, asserting that the South Dakota courts and administrative bodies failed to consider and address his claim that the civility clause in the COHE agreement is unconstitutionally vague and overbroad.[2] Defendants object to Keating's request, claiming that he failed to raise the constitutionality of the civility clause as a separate claim and that is why it was not addressed in state proceedings. A review of the pleadings and transcript from the state proceedings shows that Keating raised the issue but the merits of that particular claim were never discussed.

---

[2] Keating raises other issues which clearly were decided on the merits in the state proceedings. He believes they were wrongly decided. The *Rooker-Feldman* doctrine prevents those who lose in state court from bringing suit in federal court to set aside the state-court judgment. *See Exxon Mobil Corp. v. Saudi Indus. Corp.*, 544 U.S. 280, 284 (2005); *Gisslen v. City of Crystal*, 345 F.3d 624 (8th Cir. 2003) (under *Rooker-Feldman* doctrine, district court has no authority to review a state court decision, even if is alleged that the state court's action was unconstitutional). The *Rooker-Feldman* doctrine prohibits this Court from reviewing the rulings of the state courts in this case.

## DISCUSSION

After the non-renewal of Keating's contract in June of 2004, Keating filed a series of thirteen grievances between June 25 and August 1, 2004, under the grievance procedures provided for in the COHE agreement.[3] (Doc. 46-2, p. 3.) All of the grievances were denied. (*Id.*) Keating appealed five of the grievances to the South Dakota Board of Regents, and the Board appointed a hearing officer to make recommendations about whether to grant or deny each of Keating's grievances. (Doc. 37-1, p. 26.) The hearing officer issued a letter decision recommending the denial of each grievance. (Doc. 37-1, pgs. 26-40.) Relying on the these recommendations, the Board of Regents denied Keating's grievances. (Doc. 37-1, p. 41.) Keating represented himself throughout these proceedings.

Still without a lawyer representing him, Keating also sought redress at the state's administrative level. On August 7, 2004, Keating filed a Petition for Hearing on Unfair Labor Practice with the South Dakota Department of Labor, naming James Abbott and USD as respondents. (Doc. 37-1, p. 19-25.) In addition to his claims for wrongful dismissal, retaliatory discharge, violation of the COHE agreement, violation of his free speech rights, and a violation of SDCL § 3-18-3.1, Keating alleged that, "No definition of uncivil behavior is provided for in the COHE agreement." (Doc. 37-1, p. 11.) Judge Randy Binger, Administrative Law Judge for the Department of Labor, was assigned to Keating's Petition. In a letter to Judge Binger dated December 28, 2004, Keating stated in relevant part:

> Appendix G of the COHE agreement provides no definition "uncivility" and provides no measure of "uncivility". It is clear that the entire section of Appendix G of the COHE agreement dealing with dismissal for reasons of being uncivil is unconstitutional and I petition Your Honor to declare it so.

---

[3]Copies of pleadings from Keating's state court action and his administrative proceedings have been filed by both parties and the Court will take judicial notice of the documents pursuant to Rule 201 of the Federal Rules of Evidence. *See also Deford v. Soo Line R. Co.*, 867 F.2d 1080, 1087 (8th Cir. 1989)(taking judicial notice of pleadings filed in a separate action in a federal district court in Chicago). The Court notes that not all of the pleadings from the state proceedings have been filed by the parties.

4

(Doc. 37-1, p. 22.) On November 6, 2006, after considering all the evidence and argument of the parties, Judge Binger issued findings of fact and conclusions of law holding that Keating failed to establish any of his claims (Doc. 46-2, p. 1-6). Judge Binger's Conclusions of Law were:

> A. USD properly applied the provision of the COHE Agreement regarding non-renewal of contracts in deciding not to renew Keating's tenure track contract.
> B. None of Keating's contract rights were violated.
> C. USD did not retaliate against Keating for exercising his grievance rights.
> D. Keating's right of free speech was not infringed.
> E. Keating failed totally to carry his burden of proof regarding the grievances, his claim of retaliation or his claim of infringement of his free speech rights.
> F. The decision of the Board of Regents denying Keating's grievance appeals should be affirmed.
> G. The allegations of unfair labor practices filed with the Department of Labor should be dismissed.

(Doc. 46-2, p. 6.) Judge Binger did not address whether the civility clause in the COHE agreement is unconstitutional. Keating appealed the Department's findings to the First Judicial Circuit Court.

On appeal, Keating submitted a pro se brief, dated January 8, 2007, regarding the constitutionality of the civility clause in the COHE agreement. (Doc. 45-2.) A hearing was held before Judge Steven Jensen on July 19, 2007. (Doc. 45-1, Transcript of Hearing on Administrative Appeal.) Keating was present in the courtroom, and attorney Robert Frieberg appeared on behalf of USD and Mr. Abbott. (*Id.* at p. 3 of Transcript.) During the hearing, Judge Jensen indicated that he had a question about Keating's free speech claim. Judge Jensen said, "Is there a - - I know there's a challenge to the civility policy. Mr. Keating says that's unconstitutional. Is there both a claim or a grievance that - - that claims both the civility clause is unconstitutional and a separate free-speech claim?" (*Id.* at p. 58.) Mr. Frieberg responded that he did not know the answer to the question, and he did not know where the issue of the constitutionality of the civility clause "first cropped up." Frieberg thought the issue had been raised in front of the Department of Labor, and he believed it was addressed by both the Department of Labor and the hearing examiner for the Board of Regents. (*Id.* at p. 59-60). The pleadings filed with the Court in this federal action do not show how the merits of the claim were addressed in the those proceedings.

5

After hearing both written and oral arguments, Judge Jensen affirmed the Department's decision. (Doc. 45-2, p.14-23.) In a letter opinion dated November 30, 2007, Judge Jensen concluded that Keating's grievances lacked merit, including his claim that the non-renewal of his contract based on the civility clause in the COHE agreement violated his right to free speech. It is the opinion of this Court that the state court correctly determined Keating's speech was not protected by the First Amendment, and the claim was properly denied on the merits. Judge Jensen did not address the constitutionality of the civility clause other than as it was applied to Keating. (*Id.*)

Keating appealed the circuit court's decision to the South Dakota Supreme Court, which summarily affirmed the Judge Jensen's decision pursuant to SDCL § 15-26A-87.1, concluding that it was "manifest on the face of the briefs and the record that the appeal is without merit and on the ground that the issues on appeal are clearly controlled by settled South Dakota law or federal law binding upon the states." (Doc. 46-4.) Keating then filed a petition for writ of certiorari with the United States Supreme Court, which was denied. (Doc. 45, p. 3.)

Based on the Court's review of the record, Keating's claim that the civility clause in the COHE agreement is unconstitutionally vague or overly broad was not addressed in any of the parallel state proceedings. However, the Court questions whether Keating has standing to challenge the constitutionality of the civility clause in the COHE agreement.[4] Keating is no longer a professor at USD, and it appears he has no legally cognizable interest in the outcome of his challenge. The parties are directed to brief whether Keating has standing to challenge the civility clause even though it has not been unconstitutionally applied to him. The Court recognizes that the civility clause is part of a contract reached during collective bargaining between the teachers' union and the University or the Board of Regents and that most cases involve challenges to statutes, or to policies unilaterally

---

[4]The Court notes that the Sixth Circuit has held that the overbreadth doctrine is an exception to conventional standing requirements (under which a plaintiff must show an actual or imminent injury), "and allows parties not yet affected by a statute to bring actions under the First Amendment based on a belief that a certain statute is so broad as to 'chill' the exercise of free speech and expression." *Dambrot v. Central Michigan Univ.*, 55 F.3d 1177, 1182 (6th Cir. 1995).

imposed by the university. The parties' briefs should address how this fact impacts the standing analysis. Accordingly,

IT IS ORDERED:

1. That the Motion to Reopen, doc. 45, is granted for the sole purpose of determining whether Keating has standing to pursue his challenge to the constitutionality of the civility clause in the COHE agreement.

2. That, on or before September 30, 2010, each party shall submit a brief on the standing issues as set forth in this Order. Each party may submit a reply brief on or before October 31, 2010.

3. That the Motion to Compel Defendants' Rebuttal, doc. 48, and the Motion for Summary Judgment, doc. 51, are denied as moot.

Dated this 27th day of August, 2010.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: Summa Wahupt
(SEAL)      DEPUTY