UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

FILED
JUL 10 2012

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| CHRISTOPHER KEATING, | * | CIV 04-4208 |
| Plaintiff, | * | |
| -vs- | * | MEMORANDUM OPINION AND ORDER |
| UNIVERSITY OF SOUTH DAKOTA, JAMES ABBOTT, ROYCE ENGSTROM, DONALD DAHLIN, MATTHEW MOEN, TIMOTHY HEATON, CHRISTINA KELLER, SOUTH DAKOTA BOARD OF REGENTS, MIKE ROUNDS, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

The parties have briefed the issue whether Plaintiff, Christopher Keating ("Keating"), has standing to pursue his overbreadth and vagueness claim. In addition to his free speech claim, Keating asserts that the University's civility clause is overbroad and vague. Keating's employment at the University of South Dakota was terminated for his violation of the civility clause.[1]

## BACKGROUND

Keating was a tenure-track professor at the University of South Dakota from 1999 through 2004. During the 2004-2005 academic year, Keating was under the COHE agreement. Keating worked in the Department of Earth Sciences and Physics along with Timothy Heaton (Heaton), the Department Chair, and Christina Keller (Keller), Keating's direct supervisor.

---

[1] Keating was under the collective bargaining agreement between the Council of Higher Education and the South Dakota Board of Regents (the COHE agreement).

In September 2003, Keating made a complaint to Heaton, in Heaton's capacity as Department Chair, that Keating's supervisor, Keller, was creating a hostile working environment. This complaint was taken to the University President, James Abbott, without Keating's approval. On April 23, 2004, Heaton sent an e-mail to Keating. The next day, Saturday, April 24, Keating replied to Heaton in an e-mail that stated, in part:

> On the other hand, I did come to you with my problems and the result was highly unsatisfactory. You came back and insisted that not only did I not have anything to complain about, but everything except the price of corn futures was my fault. We will ignore the fact the two are mutually exclusive. How could I be at fault for everything when you already concluded there was nothing wrong? You and Dr. Keller took the matter out of the department and made it a school-wide problem. You did nothing to address my problems except to tell me that I was essentially not part of the department. You then threatened me with false charges of sexual harassment and stated in your letters that I had engaged in inappropriate behavior.
>
> I came to you with a problem and you made it infinitely worse. Your actions have cause permanent damage to my relationship with the two of you. There is no way I can trust you with another problem.
>
> I cannot communicate with Dr. Keller because she is a lieing [sic] backstabbing sneak. I ask her questions and she will not answer. She learns important information and she withholds it. She keeps a secret file on me that she pulls out to use against me. She then talks badly about me around campus.

In terms of context, the e-mail was sent by Keating from his computer at his home on a Saturday.

On June 15, 2004, Keating received a letter from Academic Affairs scheduling a meeting for June 22, 2004, at which they would discuss the prospect of not renewing his teaching contract. Heaton and Keller were present, and Keating explained at the meeting that his comment that Keller was a "lieing, backstabbing sneak" was "factually correct." Keating's contract was not renewed for the 2005-2006 academic year for his violation of the COHE civility clause, which provides:

> Universities play a special role in preparing students to lead the complex social organizations through which businesses and professions operate and through which free people govern themselves. Students must be taught, and they must be shown

2

> through the example given by institutional employees, that members of stable, effective and prosperous social organizations observe norms of conduct under which all participants treat one another civilly and carry out their respective tasks in a constructive and informed manner. Complex social organizations derive their strength from the cooperation of those who participate in them. By virtue of their special role in preparing future generations of leaders, universities have a particular concern with conduct that destroys the bonds of cooperation and common purpose on which society rests by demeaning members of the community, and such conduct cannot be tolerated in an institution whose very purpose is to shape the skills and conscience of the rising generations.

Keating filed this pro se lawsuit on December 21, 2004, claiming that he was fired because of speech that is protected by the First Amendment. He also asserted in his Complaint that no definition of uncivility as used in the COHE agreement has ever been provided. After Defendants filed a motion for summary judgment, Keating moved to amend his Complaint to sue Defendants in their individual capacities, to add state law claims for "tortious negligence, negligent supervision and training, intentional infliction of emotional distress, and negligent infliction of emotional distress," to add a reference to 42 U.S.C. § 1983, and to include a claim that his mobilization for the Naval Reserves was "a contributing factor" to the nonrenewal decision in violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"). Keating's motion to amend the complaint and Defendants' motion for summary judgment were denied as moot because the Court stayed the federal lawsuit pending resolution of Keating's claims in state court. After concluding that the South Dakota courts could resolve all of Plaintiff's state law claims as well as his constitutional law and USERRA claims, this Court abstained from addressing the issues which were pending before the state tribunals. (*See* Doc. 43, Memorandum Opinion and Order issued August 22, 2005.) This federal lawsuit was stayed, but not dismissed, to allow the Court to retain jurisdiction "in case the state litigation 'washes out' for some reason and fails to reach its anticipated end of a final decision on the merits." (*Id.*) Five years later, this case was reopened to determine whether Keating has standing to pursue his constitutional overbreadth and vagueness challenge to the civility clause on which his employment termination was based. (See Doc. 53, Memorandum Opinion and Order issued August 27, 2010.)

When Keating moved to reopen this case, a review of the pleadings and transcript from the state proceedings showed that Keating clearly raised the issue but that the South Dakota courts and administrative bodies failed to consider and address the merits of his claim that the civility clause in the COHE agreement is unconstitutionally vague and overbroad.[2] The parties were directed to brief whether Keating has standing to assert that claim in this case.[3] The parties have fully briefed the standing issue and, for the following reasons, the Court finds Keating has standing to pursue his overbreadth and vagueness challenge to the civility clause.

## DISCUSSION

The United States Supreme Court has held that where the claim is that a statute is overly broad in violation of the First Amendment, a party can assert the rights of another "'with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity.'" *Broadrick v. Oklahoma*, 413 U.S. 601, 612, (1973), *quoting Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965). The Supreme

---

[2]The state court held that the civility clause was constitutional as applied to Keating because his speech does not merit First Amendment protection.

[3]Keating also raised issues which he believed were wrongly decided on the merits in the state proceedings. The Court stated that the *Rocker-Feldman* doctrine prevented review of the state court decisions on those issues. (Doc. 53.) Keating asks the Court to reconsider that ruling, pointing out that the Supreme Court in *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280 (2005), narrowed the scope of *Rocker-Feldman*. The Eighth Circuit has explained that *Exxon* imposed a "timing requirement" which limits *Rocker-Feldman*'s application only to those federal cases commenced after the state court resolved the claims. *See Robins v. Ritchie*, 631 F.3d 919, 927-28 (8th Cir. 2011). Because Keating's federal lawsuit was filed before his claims were resolved in state court, the *Rocker-Feldman* doctrine in fact would not prohibit this Court from exercising jurisdiction over Keating's claims that were finally resolved in state court. That does not mean the Court can address the issues Keating believes were wrongly decided in state court. It is likely that many of Keating's claims would be barred under issue or claim preclusion. *See, e.g., Edwards v. City of Jonesboro*, 645 F.3d 1014, 1019 (8th Cir. 2011) ("Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must 'give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged.'") (quoting *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982). If Keating desires to amend his Complaint, he must file an appropriate motion and the Court will decide what, if any, amendments will be allowed after Defendants have responded to the motion.

Court has discussed the reason for relaxing the standing requirements in the First Amendment context:

> Within the context of the First Amendment, the Court has enunciated other concerns that justify a lessening of prudential limitations on standing. Even where a First Amendment challenge could be brought by one actually engaged in protected activity, there is a possibility that, rather than risk punishment for his conduct in challenging the statute, he will refrain from engaging further in the protected activity. Society as a whole then would be the loser. Thus, when there is a danger of chilling free speech, the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statute challenged. "Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick v. Oklahoma*, 413 U.S. 601, 612, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973).

*Sec'y of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 956-57 (1984). Thus, Keating has standing to bring a facial challenge to the civility clause as overbroad or vague, regardless of whether Keating's own First Amendment rights were violated.[4] *See Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 634 (1980) ("Given a case or controversy, a litigant whose own activities are unprotected may nevertheless challenge a statute by showing that it substantially abridges the First Amendment rights of other parties not before the court."). Accordingly,

IT IS ORDERED:

1. That Keating has standing to pursue his constitutional overbreadth and vagueness challenge to the civility clause in the COHE agreement.

2. That the case is reopened.

3. That an Order For Form 52 Report and Scheduling Information will be issued.

---

[4]This Court has concluded that Keating's speech does not address a matter of public concern and is not protected speech. (*See* Doc. 43, Memorandum Opinion and Order issued August 22, 2005, at p. 11.)

Dated this 10th day of July, 2012.

BY THE COURT:

/s/ Lawrence L. Piersol
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: /s/ Summa Wahpa
(SEAL)        DEPUTY